NEW JERSEY MISCELLANEOUS REPORTS.    37

N. J. Dept. Labor—Calio v. H. Dinnerman & Horwitz-Goodman Co.

NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

ANTONIO CALIO, PETITIONER, v. HARRY DINNERMAN & HORWITZ-GOODMAN COMPANY, RESPONDENTS.

**Injury to Eye Resulting in Loss Thereof—Question of the Identity of Employer—Facts Submitted and Respondents Held to be Partners.**

On petition for compensation, determination and judgment.

For the petitioner, *Bourgeois & Coulomb* and *George M. Shipman, Jr.*

For the respondents, *Harry Dinnerman, Edwards & Smith* and *Emil Neblo.*

A petition having been filed in the above-entitled cause of action praying for the compensation to which the petitioner may be entitled by virtue of the terms and provisions of an act of the legislature of New Jersey entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employe in the course of his employment, &c.," approved April 4th, 1911, together with the several supplements thereto and amendments thereof, and a time and place for hearing having been fixed, and the matter coming on to be heard before me at Atlantic City, New Jersey, on October 7th, 1925, on formal hearing in the presence of Bourgeois & Coulomb, by George M. Shipman, Jr., counsel for petitioner, and Joseph B. Perskie, counsel for respondent Harry Dinnerman, and Edwards & Smith by Emil Neblo, counsel for respondent Horwitz-Goodman Company, and having duly considered the evidence produced by said parties and arguments of counsel, I do find and determine as follows:

It appears from the testimony that petitioner was employed as a carpenter by the respondents, and was, at the time in question, working upon certain buildings which were being erected by the respondents at the corner of Drexel and Pennsylvania avenues, Atlantic City, New Jersey, and was receiving a wage of $49.50 per week. On the 24th day of January, 1925, while the petitioner was so engaged in work and was striking a nail with a hammer, a piece of steel, either from the nail or the hammer, flew into his right eye. Petitioner immediately reported his injury to respondent Dinnerman, who was present upon the premises at the time, and Dinnerman directed petitioner to go to the doctor, which petitioner forthwith did. The doctor removed the steel after making an incision in the petitioner's eye, and gave the petitioner a course of treatment in an endeavor to save the eye, but, subsequently, it became necessary to remove said eye, and an operation was performed for this purpose. Petitioner has done no work since the time of the accident.

Respondent Dinnerman testified that he reported the accident to the Horwitz-Goodman Company a few days after it occurred. This was admitted by Samuel Horwitz, president of this company.

It appears that the Horwitz-Goodman Company was the party chiefly interested in the building operation upon which the petitioner was working and contributed most of the capital for the operation. Samuel Horwitz, president of the Horwitz-Goodman Company, testified that his company was a real estate concern and had little or no experience in the building field, and knowing Dinnerman to be an experienced builder, he having worked with the company on previous operations of a similar nature, the Horwitz-Goodman Company entered into an agreement with him whereby Dinnerman was given charge of "managing the job," the understanding being that Dinnerman was to receive a salary of $50 per week and twenty-two per cent. of the profits realized from the sale of the buildings. The Horwitz-Good-

man Company was to receive fifty-two per cent. of the profits and the remaining twenty-six per cent. was to go to one Dr. Rubinstein, who also furnished some of the working capital. It also appears that Dinnerman himself put a certain amount of capital into the enterprise. Dinnerman was to hire the labor, give out the contracts and have general supervision of the operation. The petitioner himself was hired by Dinnerman and referred to him as "the boss." It appears, however, that payments were generally made directly by the Horwitz-Goodman Company. For instance, the building permit for the operation was paid for by its checks; also the architect; also the contractor, who did the roofing and metal work, testified that his contract was directly with the Horwitz-Goodman Company; that Dinnerman paid him, giving him the Horwitz-Goodman Company's check.

After a consideration of the entire evidence, I have come to the conclusion that the relation between Dinnerman and the Horwitz-Goodman Company was that of a partnership, and that they are jointly and severally liable to the petitioner.

CHARLES E. CORBIN,
*Deputy Commissioner.*